UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**DAN J. FRAZER**, and
**SANDRA J. FRAZER**,

Debtors.

Case No. **06-60704-13**

## *MEMORANDUM of DECISION*

At Butte in said District this 27th day of March, 2008.

In this Chapter 13 bankruptcy, after due notice, a hearing was held February 5, 2008, in Butte on confirmation of Debtors' Sixth Amended Chapter 13 Plan dated December 3, 2007, and on Debtors' Motion for Award of Fees and Costs filed January 8, 2008, wherein Debtors seek an award of fees and costs against secured creditor Cheryl L. Britton ("Britton") for the fees and costs Debtors assert they have incurred in defending Britton's Motion to Determine Applicability of Stay, and for prosecuting an appeal of this Court's Order holding that the automatic stay did not apply to Britton because 11 U.S.C. § 108(b) trumped 11 U.S.C. § 1322(c)(1). The Chapter 13 Trustee, Robert G. Drummond, of Great Falls, Montana, appeared at the February 5, 2008, hearing. In addition, attorney R. Clifton Caughron ("Caughron"), of Helena, Montana, appeared at the hearing on behalf of the Debtors and attorney James A. Patten, of Billings, Montana, appeared at the hearing on behalf of Britton. No testimony or

exhibits were offered at the hearing. However, the Court takes judicial notice of the record in this case, including Britton's Exhibits A, B, C and D that were admitted into evidence at a prior hearing.[1] Debtors filed a brief with their Motion for Award of Fees and Costs on January 8, 2008. Although Debtors had filed a brief with their motion, the Court, after hearing comments from Debtors' counsel and Britton's counsel, granted Debtors time through February 15, 2008, to file a brief in support of their position, and granted Britton through February 22, 2008, to respond to Debtors' initial or supplemental briefs. Debtors tardily filed a "Response to Britton's Objection to Debtors' Motion and Brief for an Award of Fees and Costs" on February 18, 2008. Britton timely filed a Reply to Debtors' Response on February 21, 2008, noting therein that "[t]his reply is to the Debtor's [sic] response which was late filed on February 18,

---

[1] FED. R. EVID. 201(b) requires that the "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The Court can judicially notice what has been filed in the Court docket:

> Fed.R.Evid. 201(c) and (f) permit the Court to take judicial notice of any adjudicative facts at any time. The question becomes whether the statements made within the Schedules, IRS*s Proof of Claim and Stipulation concerning the IRS's claim are evidential or judicial admissions. Chief Judge Lindquist, in *In re Earl*, 140 B.R. 728, 730-31 n.2 (Bankr. N.D.Ind. 1992), stated in a note:
>
> > . . . a bankruptcy court is duty bound to take judicial notice of its records and files. (citation omitted).

*See Rapid Excavating, Inc., v. Stock (In re Rapid Excavating, Inc.)*, 21 Mont. B.R. 472, 499-500 (Bankr. D. Mont. 2003).

2008." The time within which to file briefs with respect to Debtors' Motion for Award of Fees and Costs has expired and the matter is now ready for decision.

This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law. For the reasons discussed herein, the Court denies Debtors' Motion for Award of Fees and Costs and also denies confirmation of Debtors' Sixth Amended Chapter 13 Plan.

## FACTUAL BACKGROUND

Debtors commenced their Chapter 13 bankruptcy on August 25, 2006. On July 7, 1995, eleven years prior to Debtors' bankruptcy petition date, Debtors purchased certain property described as Tract 31A-5 of subdivision Plat No. 188 from Levi J. Britton and Barbara L. Britton and executed a Contract for Deed in conjunction therewith. The Contract for Deed was for $25,000 and provided for a $4,000 down payment and $21,000 paid by monthly installments of $282 commencing on August 7, 1995, and continuing on the seventh day of each month thereafter until the principal and accrued interest was paid in full. Interest accrues at the rate of 10%, and by its stated terms, said Contract for Deed, through its stated amortization, would have been paid in full during 2005.

On or about February 25, 2005, Levi J. Britton and Barbara L. Britton assigned their interest in the Contract for Deed to Britton. For reasons unknown to the Court, Debtors failed to payoff the Contract for Deed under its stated terms. Britton thus sent Debtors a notice of default dated June 21, 2006, advising Debtors that they were in default under the July 7, 1995, Contract for Deed for their failure to pay principle, escrow fees, late fees and attorney fees totaling $14,147.84. The June 21, 2006, default notice granted Debtors 30 days to cure the default. Debtors failed to cure the default and thus, Britton sent Debtors a second thirty-day

3

notice as required by the Contract for Deed. The second thirty-day notice was dated July 25, 2006, and advised Debtors that Britton was accelerating the entire outstanding balance of $14,147.84, and that "[f]ailure to fully pay all amounts due and owing, including late fees, escrow fees, bank charges and attorneys fees within thirty (30) days of the date of this letter, together with providing the escrow agent with proof that the 2nd half of 2005 real estate taxes have been paid, will result in the Seller terminating the contract for deed without further notice."[2] Debtors failed to cure the default as outlined in the second thirty-day letter and instead filed a bankruptcy petition on August 25, 2006. The parties agree that Britton's first and second thirty-day letters complied with the terms of the Contract of Deed. The parties similarly agree that Debtors had until August 28, 2006, to pay the accelerated balance of $14,147.84 or the property would be forfeited.[3]

In response to a Motion to Determine Applicability of Stay filed by Britton on

---

[2] Britton sent Debtors the first and second thirty-day letters in accordance with the following language set forth in Paragraph IV of the Contract for Deed:

In the case of the failure of the purchasers to make any payments of principal or interest, to pay the taxes on the property before they become delinquent, or to perform any other covenant and condition on their part made and entered into, the sellers at their election may declare this contract in default by sending written notice to the purchasers and the escrow agent, setting forth in the notice the amount due upon the contract, time and place where payment can be made, and any breach or breaches. Should such default remain uncured for more that thirty (30) days after written notice to purchasers, the sellers may at their option, by an additional written notice to purchasers and the escrow agent, accelerate the entire outstanding balance, together with accrued interest immediately due and payable, and upon nonpayment after thirty (30) days, sellers may terminate and forfeit this agreement without further notice. . .

[3] The Contract for Deed specifically provides in Paragraph VI that "[a]ny notice mailed shall be deemed complete and effective upon receipt by the addressee."

4

November 1, 2006, this Court entered a Memorandum of Decision and Order on December 6, 2006, which held, based upon long-standing Montana law, that Debtors could not revive the fully matured and accelerated Contract for Deed in their bankruptcy and pay the balance owing over the term of their Chapter 13 Plan, but instead, were required to pay the accelerated balance of $14,147.84 within 60 days of their petition date under 11 U.S.C. § 108(b). In a published decision, the United States Bankruptcy Appellate Panel of the Ninth Circuit ("BAP"), in what the BAP noted was a case of "first impression," disagreed with this Court's interpretation of the Bankruptcy Code, namely that 11 U.S.C. §§ 108(b) trumped 1322(b), and concluded that Debtors could cure their default under a Chapter 13 plan, and thus in essence revive the fully matured Contract for Deed under the Bankruptcy Code, pay the default under the plan, and return the Contract to Deed to it prebankruptcy condition wherein the entire accelerated balance of the Contract of Deed was owed. *In re Frazer*, 377 B.R. 621, 630 (9th Cir. BAP 2007).

The BAP's ruling prompted Debtors' counsel to then file the pending one and one-half page combined Motion for Award of Fees and Costs, and Brief wherein Debtors' counsel argues that Debtors, because they were successful with their appeal, should be awarded the fees and costs that they "have accrued in defense of their rights in this case concerning the Contract." Debtors' belief that they are entitled to their fees and costs is premised on this Court's ruling in *In re Decker*, 2007 WL 4459090 (Bankr. D. Mont. 2007) (Slip Copy), and Article XVII of the Contract for Deed. Debtors' entire argument is as follows:

> 2. Article XVII of the Contract reads in relevant part as follows:
>
> > "If litigation occurs concerning the rights of any party in this agreement, the successful party, whether the sellers or the purchasers, shall recover reasonable attorney fees and court costs in addition to remedies otherwise recoverable."

5

3.  This Court has enforced such fee provisions recently, and should do so here. (See, e.g., *In re Decker*, Case No. 05-64945, Memorandum of Decision dated December 14, 2007). Here, there is no question that the Debtors have been "successful" in their litigation against Britton. Under the clear terms of the parties' agreement as set forth above, Debtors are entitled to an award of their attorney fees and costs.

4.  Britton should be given an opportunity to pay the attorney fees and costs upon a showing of the accrued amount thereof (that showing is not complete at this time as the parties continue to accrue fees and costs), and if she does not do so within a reasonable time after they are approved by the Court, the Court should order that the reasonable fees and costs as awarded be set off against the amount the Debtors owe Britton on the Contract.

## DISCUSSION

The first matter to resolve is what to do with Debtors tardily filed post-hearing brief. The Court's Order entered February 5, 2008, specifically provided that "Debtors shall have through Friday, February 15, 2008, to file a brief in support of their Motion for Award of Fees and Costs". Debtors' post-hearing and supplemental brief was not filed until 5:25 p.m. on Monday February 18, 2008. After much consideration, and given the fact that Britton's counsel made a point of noting that Debtors' response was "late filed on February 18, 2008", the Court finds it appropriate to disregard Debtors' February 18, 2008, Response to Britton's Objection to Debtors' Motion and Brief for an Award of Fees and Costs. Caughron holds himself out as a highly skilled bankruptcy attorney and consequences must occur when such a self-proclaimed, highly skilled attorney chooses to disregard deadlines imposed by this Court. "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992).

As for the matter of Debtors' request for an unspecified amount of fees, relying on *In re Decker*, 2007 WL 4459090, Debtors assert that they are entitled to an award of fees against

Britton because Debtors were "successful" with their appeal to the BAP because the BAP ruled that Debtors' could pay the accelerated balance of the Contract for Deed over the life of a Chapter 13 plan. In *In re Decker*, a secured creditor claimed that it was contractually entitled to its fees and costs under a note and deed of trust. The creditor in *Decker* claimed that it incurred, over a period of roughly 15 months, fees and costs totaling $40,111.53 for opposing confirmation of several Chapter 13 plans, defending its claim against the debtors and for defending an adversary proceeding brought against the creditor by the debtors wherein the debtors sought damages and to rescind a note and deed of trust. The debtors in *Decker*, who were represented by Caughron, opposed the creditor's fee request for several reasons and countered that the debtors, as the successful party in their adversary proceeding, were entitled to mandatory attorney fees and costs from the creditor.

The contractual provision at issue in *Decker* specifically provided if the borrower failed to perform, "or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy . . .), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property . . ., including paying reasonable attorney fees...." The nature of the proceedings in *Decker* coupled with the broad language quoted above from the deed of trust established that the creditor's request for fees was specifically based on its contractual rights.

This Court in *Decker* also quickly rejected the debtors' claim that they were the successful party in the adversary proceeding, noting that "Debtors' claim of success in Adv. No. 06-00002 is burdened by the inconvenient fact that summary judgment was entered against them in Adv. No. 06-0002 dismissing all their claims, including their TILA [Federal Truth in

7

Lending Act] claims, and overruling their objection to Proof of Claim No. 4." Having rejected the debtors' opposition to the creditor's request for fees and costs, and concluding that the creditor's request was specifically premised on its contractual rights under the note and deed of trust, the Court awarded the creditor reasonable fees and costs of $37,207.21.[4]

Notwithstanding the fact that the fees and costs requested by the creditor in *Decker* were clearly contemplated by the deed of trust, the Court nevertheless finds it insightful to examine the unanimous decision of the United States Supreme Court in *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.,* __ U.S. __, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007), that abrogated the holdings stated in *Fobian v. West. Farm Credit Bank (In re Fobian)*, 951 F.2d 1149, 1153 (9th Cir. 1991), and *DeRoche v. Ariz. Industrial Comm. (In re Deroche)*, 434 F.3d 1188, 1191 (9th Cir. 2006), which had provided: "[W]here the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment by the losing party." In abrogating the *Fobian* holding the Supreme Court noted that a claim is determined in the first instance by nonbankruptcy law, generally state law, subject to any qualifying or contrary provisions of the Bankruptcy Code. __ U.S. __, 127 S.Ct. at 1205 ("when the Bankruptcy Code uses the word 'claim' . . . it is usually referring to a right to payment recognized under state law"). As such, "[t]he character of a contractual obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy." __ U.S. __, 127 S.Ct. at 1206.

The Court finds that *Decker* does not offer support for the fees and costs requested by

---

[4] Some of the fees and costs requested by the creditor in *Decker* were denied for various reasons, such as lumping.

8

the Debtors in this case. The Bankruptcy Code does not provide a general right to attorney's fees. *Heritage Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997). However, a prevailing party in bankruptcy litigation may be entitled to an award of attorney fees under nonbankruptcy law, such as a contractual provision authorizing such:

> When a bankruptcy court adjudicates a contract claim in connection with a petition in bankruptcy, the court applies state law to the contract dispute unless the bankruptcy code provides otherwise. 4A Collier's on Bankruptcy ¶ 70.04, at 60-62 n. 31 (14th ed. 1978). Moreover, the court should apply state law not merely in determining whether a breach of contract occurred, but also in deciding whether to award attorneys' fees on the claim. See *In Re Sonoma V,* 23 B.R. 789, 796 (Bkrtcy. 9th Cir.1982); *see also Klopfenstein v. Pargeter,* 597 F.2d 150, 152 (9th Cir.1978) (state law governs award of attorneys' fees when federal court sits in diversity jurisdiction); *Matter of Comstock,* 16 B.R. 206 (Bkrtcy.D.Idaho 1981) (state law governs attorneys' fees award in case removed from state to bankruptcy court).

*Merced Prod. Credit Ass'n v. Sparkman (In re Sparkman)*, 703 F.2d 1097, 1099 (9th Cir. 1983).

Applying the foregoing, and the discussion contained in *Travelers, supra,* the Court finds that Debtors' Motion for Award of Fees and Costs filed January 8, 2008, must be denied. First, under Montana law, the case of *Reinke v. Biegel*, 604 P.2d 315, 185 Mont. 31 (1979), is instructive. In *Reinke*, the Biegels purchased two lots from the Reinkes under a contract for deed. The Biegels defaulted on their payments on one of the lots and in a quiet title action commenced by the Reinkes, the Biegels sought to avoid forfeiture by counterclaiming for damages and for injunctive relief stemming from the Reinkes' breach of a restrictive covenant that ran with the land. The Supreme Court of Montana framed the dispositive issue in *Reinke* as thus: "where lots within a legal subdivision are sold pursuant to a contract for deed, does the sellers' breach of a restrictive covenant, occurring prior to the contracted due date and relating to a thirty foot setback requirement on sellers' adjacent lot, excuse the buyer from his duty to

9

make payment by the due date so that his right to recover damages is not precluded by his failure to make such payment." The Supreme Court of Montana answered the above inquiry in the negative, reasoning that the "primary consideration in a contract for deed is the sellers' delivery of a deed in exchange for the buyers' payment of the purchase price." *Id*. at 37. The buyers in *Reinke*, by failing to tender payment of the purchase price on or before the due date of the contract for deed, were precluded from standing on the contract to recover damages. The Supreme Court of Montana thus agreed with the District Court that any rights the Biegels "might have acquired by the contract became forfeited by reason of their failure to cure the default in a timely manner."

The reasoning set forth in *Reinke* is equally applicable to this case. Britton, unlike the sellers in *Reinke*, has not breached the Contract for Deed. Debtors, on the other hand, like the buyers in *Reinke,* have breached the Contract for Deed by failing to tender payment to Britton on or before the due date of the Contract for Deed. The Court's ruling in *Reinke* brings to mind the maxim that he who comes into equity must come with clean hands. This Court therefore concludes that under Montana law, by breaching the Contract for Deed, Debtors have forfeited their right to claim any damages.

The parties appear to agree that under the Default Provisions of the Contract for Deed, Britton was entitled to terminate the Contract for Deed on August 28, 2006. Before the August 28, 2006, deadline expired, Debtors filed a bankruptcy petition on August 25, 2006." Recognizing such, the BAP in this case specifically held that "on the date Debtors' petition was filed, the time to cure under the Contract had not expired and forfeiture of Debtors' rights under the Contract had not been completed. Therefore, Debtors retained an equitable interest in the

10

property that became property of the estate, including the right to cure the default." *Id*. at 627. The BAP's ruling, however, does not expand Debtors' rights to include a claim for attorney fees under the Contract for Deed, simply because the Contract was reinstated by the Chapter 13 filing.           Moreover, the Court does not find that Debtors were successful on the issue they argued before this Court and the BAP. As noted by this Court in *Decker*, quoting *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Services*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), "successful party" is a "legal term of art." Although the Contract for Deed was not fully terminated on August 25, 2006, the Court agrees with Britton's counsel that Debtors' argument to this Court, as set forth in the Court's Memorandum of Decision entered December 6, 2006, was that "[s]ection 1322(c)(1) governs this case to the exclusion of section 108(b), since section 1322(c)(1) specifically pertains to cases filed under Chapter 13, which section 108(b) is a more general provision applicable under other chapters and circumstances." This Court disagreed with Debtors on the above issue and that was the matter that was taken on appeal. As set forth in their appellate brief, Debtors argued on appeal that "11 U.S.C. Section 108(b) trumps 11 U.S.C. §§ 362 and 1327." *See* Appellant's Opening Brief attached as Exhibit A to Britton's Objection to Motion for Award of Fees and Costs.

The BAP agreed with this Court that § 1322(c)(1) did not apply but went on to conclude that Debtors had "the right to de-accelerate the Contract and cure any defaults related to it under § 1322(b)(3) and maintain any payments pursuant to it under § 1322(b)(5)".[5] It is plainly

---

[5] This Court finds the BAP's ruling somewhat curious because § 1322(b)(5) provides that a Chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due *after* the date on which the final payment under the plan is due". (Emphasis

11

evident that the issue posited by Debtors was rejected by both this Court and the BAP.

Thus, the attorney fee provision of the Contract for Deed was not triggered because the thrust of Debtors' litigation centered around the ability to cure the delinquent payments and defaulted balance owing under the Contract for Deed through provisions of the bankruptcy code, and as such, Debtors' request for fees and costs are not the type of fees and costs contemplated by the Contract for Deed. The attorney fee provision set forth in the Contract for Deed clearly purports to provide for attorney fees related to litigation protecting a parties' rights arising under the Contract for Deed, namely, Britton's delivery of a deed and Debtors' payment of the purchase price. The litigation in this case was not at all tied to any contractual provision, so State contract law does not apply to Debtors' instant Motion.

The Court would note that the only litigation in this case that would fall under the attorney fee provision of the Contract for Deed relates to Debtors' Amended Objection to Britton's Amended Proof of Claim No. 29. A hearing on Debtors' Objection was held January 8, 2008, and following that hearing, the Court entered an Order on January 10, 2008, overruling Debtors' Objection in its entirety, reasoning:

> This Court disagrees with Debtors' position with respect to Britton's amended Proof of Claim. The parties do not dispute the facts as shown in Exhibit C. Exhibit C shows that as of June 21, 2006, Debtors owed Britton $14,147.84, which amount consisted of $13,781.91 in principal, $135.93 in interest, $110.00 in escrow fees, $20.00 in late fees and $100.00 in attorney fees. Debtors also do not dispute that the per diem interest on the principal balance was $3.776.
>
> According to this Court's calculation, 64 days elapsed between June 21,

---

added). In the case *sub judice*, the final payment on the Contract for Deed was due in 2005, a date this is clearly prior to the date on which any final payment under Debtors' proposed Chapter 13 plan would be due.

12

>   2006, and August 25, 2006, the date Debtors filed their bankruptcy petition. Therefore, in this Court's calculation, Debtors owed $14,147.84 plus an additional $241.67 for interest to Debtors' petition date, for a total of $14,389.51 as of August 25, 2006. Such amount exceeds the amount of $14,257.35 set forth on Britton's amended Proof of Claim and, therefore, the Court finds Debtors' Objection without merit. The Court would also note that Britton was under no obligation to accept the funds of $830.00 ($300.00 made July 10, 2006, $230.00 made July 26, 2006, and $300.00 made August 11, 2006) held by the escrow company as such funds were clearly inadequate to pay the default amount of $14,147.84 owed on the Contract for Deed. As such, the Court will not toll the interest owed to Britton. The same holds true for the preconfirmation payments of $5,850.00 that Debtors have made to the Trustee. However, the Court will direct the escrow company to release the $830.00 to Britton immediately upon confirmation of Debtors' Chapter 13 Plan. Such funds shall be applied first to the $230.00 of pre-petition fees and costs, then to the pre-petition interest and lastly to the post-petition interest.

Debtors' Objection to Britton's Proof of Claim clearly relates to Debtors' payment of the purchase price, including principle, escrow fees, late fees and attorney fees. That matter, however, would entitle Britton, rather than Debtors, to fees and costs.

For the reasons discussed above, the Court deems it appropriate to deny Debtors' Motion for Award of Fees and Costs filed January 8, 2008. As for confirmation, Debtors concede that their Sixth Amended Chapter 13 Plan dated December 3, 2007, does not properly account for the Court's Order entered January 10, 2008, and is, therefore, not entitled to confirmation. Accordingly, the Court will enter a separate order providing as follows:

IT IS ORDERED that Debtors' Motion for Award of Fees and Costs filed January 8, 2008, is DENIED; confirmation of Debtors' Sixth Amended Chapter 13 Plan is DENIED; Debtors shall file a further amended Chapter 13 plan on or before April 23, 2008; and a hearing on confirmation of Debtors' further amended Chapter 13 plan shall be held **Tuesday, May 13, 2008, at 09:00 a.m.**, or as soon thereafter as counsel can be heard, in the 2ND FLOOR

13

COURTROOM, FEDERAL BUILDING, 400 N. MAIN, BUTTE, MONTANA.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana