## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**DAN J. FRAZER,** and
**SANDRA J. FRAZER**,

Debtors.

Case No.  **06-60704-13**

## *MEMORANDUM of DECISION*

At Butte in said District this 16th day of January, 2009.

In this Chapter 13 bankruptcy case, after due notice, a hearing was held December 9, 2008, in Butte on the Application for Professional Fees and Costs ("Application") filed by attorney R. Clifton Caughron ("Caughron") on October 23, 2008, whereby Caughron seeks an award of fees and costs in the amount of $29,893.93, less the sum of $1,800.00 previously paid by Debtors, leaving a balance of $28,093.93.  Attorney R. Clifton Caughron, of Helena, Montana, appeared at the hearing in support of the Application.  No appearance was made in opposition to the Application, but Debtors filed written opposition to the Application on November 4, 2008, objecting to $11,714.38 of the requested fees.  Just prior to the hearing on December 9, 2008, Caughron filed a Stipulation between Debtors and Caughron whereby Caughron agreed to voluntarily limit his total fee request to $19,500.  The aforementioned Stipulation is approved in accordance with this Memorandum of Decision, which Memorandum of Decision sets forth the Court's findings of fact and conclusions of law with respect to

1

Caughron's Application.

## FACTS

Attorney Stephen R. McCue ("McCue") of Debt Relief Law, PLLC filed Debtors' voluntary Chapter 13 bankruptcy petition on August 25, 2006.  McCue filed Debtors' schedules, statement of financial affairs, Chapter 13 plan, employee income records, and Form 22C on September 11, 2006.  Per Debtors' Schedule I, debtor Dan Frazer is disabled and debtor Sandra Frazer is a laundry worker.  Debtors' combined monthly income is $2,151.42.  Per Schedule J, Debtors' monthly expenses are $1,761.66, which amount includes a $300.00 per month home mortgage payment.  Debtors amended their Schedule I on November 3, 2006, to reflect monthly income of $3,012.12.  The change in Debtors' income is attributable to a reduction of $39.30 in debtor Dan Frazer's social security, the addition of $534.00 for Debtors' daughter's social security and the addition of $386.00 per month for debtor Sandra Frazer's tax refunds.  Debtors later amended their Schedule J on April 23, 2008, to reflect monthly expenses, excluding their home mortgage payment owed to Britton, of $2,232.00, leaving Debtors with monthly disposable income of $800.12.

Also on September 11, 2006, McCue filed a Disclosure of Compensation of Attorney for Debtor(s), indicating that his fee for Debtors' Chapter 13 bankruptcy would be $1,800.00. McCue subsequently filed an amended Chapter 13 Plan and a "Disclosure of Compensation of Attorney for Debtor" on September 18, 2006.  McCue's Disclosure of Compensation of Attorney for Debtor recites that,

> [f]or legal services, I have agreed to accept payment of fees and costs to be paid as follows:  Attorney fees @ $195.00 per hour; Associate Attorney fees @ $150.00 per hour, and Paralegal fees @ $90.00 per hour. . . .  The Debtor has agreed to pay

2

fees of $1,750.00 as an administrative expense of the Chapter 13 case, of which $975.00 has been paid. These funds will be applied to payment of the Chapter 13 fees, and, in most cases, no further request for fees or costs will be made. If necessary, Debtors have agreed that I may file an additional Application for Compensation if hourly fees earned by me exceed the amount stated above.

Debtor has paid a retainer of $825.00 for costs, from which the filing fee of $274.00 has been paid.

Debtors proceeded to file a motion to avoid lien, an objection to claim and a Second Amended Chapter 13 Plan. Ted's Western Appliance filed objections to Debtors' motion to avoid lien, objection to claim,[1] and Second Amended Chapter 13 Plan and the Trustee filed an objection to confirmation of Debtors' Second Amended Chapter 13 Plan as well, but nothing out of the ordinary happened in this case until November 1, 2006, when Cheryl L. Britton ("Britton") filed a Motion to Determine Applicability of Stay.

Britton's November 1, 2006, motion was prompted by events that transpired eleven years prior to Debtors' bankruptcy petition date, when Debtors purchased certain property described as Tract 31A-5 of subdivision Plat No. 188 from Levi J. Britton and Barbara L. Britton and executed a Contract for Deed in conjunction therewith. The Contract for Deed was for $25,000 and provided for a $4,000 down payment and $21,000 paid by monthly installments of $282 commencing on August 7, 1995, and continuing on the seventh day of each month thereafter until the principal and accrued interest was paid in full. Interest accrued at the rate of 10%, and by its stated terms, said Contract for Deed should have been paid in full sometime in mid-2005.

On or about February 25, 2005, Levi J. Britton and Barbara L. Britton assigned their interest in the Contract for Deed to Britton. For reasons unknown to the Court, Debtors failed to

---

[1] Debtors later withdrew their objection to Ted's Western Appliance's Proof of Claim No. 9 and the parties settled Debtors' motion to avoid lien.

3

payoff the Contract for Deed under its stated terms.  Britton thus sent Debtors a notice of default dated June 21, 2006, advising Debtors that they were in default under the July 7, 1995, Contract for Deed for their failure to pay principle, escrow fees, late fees and attorney fees totaling $14,147.84.  The June 21, 2006, default notice granted Debtors 30 days to cure the default. Debtors failed to cure the default and thus, Britton sent Debtors a second thirty-day notice as required by the Contract for Deed.  The second thirty-day notice was dated July 25, 2006, and advised Debtors that Britton was accelerating the entire outstanding balance of $14,147.84, and that "[f]ailure to fully pay all amounts due and owing, including late fees, escrow fees, bank charges and attorneys fees within thirty (30) days of the date of this letter, together with providing the escrow agent with proof that the 2nd half of 2005 real estate taxes have been paid, will result in the Seller terminating the contract for deed without further notice."  Debtors failed to cure the default as outlined in the second thirty-day letter and instead – just a little over eleven years after entering into the 10-year Contract for Deed – filed a bankruptcy petition on August 25, 2006.  The parties agree that Britton's first and second thirty-day letters complied with the terms of the Contract of Deed.  The parties similarly agree that Debtors had until August 28, 2006, to pay the accelerated balance of $14,147.84 or the property would be forfeited.

After both Debtors and Britton briefed the matter, the Court entered a Memorandum of Decision and Order on December 6, 2006, which held, based upon long-standing Montana law, that Debtors could not revive the fully matured and accelerated Contract for Deed in their bankruptcy and pay the balance owing over the term of their Chapter 13 Plan, but instead, were required to pay the accelerated balance of $14,147.84 within 60 days of their petition date under 11 U.S.C. § 108(b).  Debtors, through McCue, appealed this Court's December 6, 2006, ruling.

4

In a published decision, the United States Bankruptcy Appellate Panel of the Ninth Circuit ("BAP"), in what the BAP noted was a case of "first impression," disagreed with this Court's interpretation of Montana law and the Bankruptcy Code, namely that 11 U.S.C. §§ 108(b) trumped 1322(b), and concluded that Debtors could cure their default under a Chapter 13 plan, and thus in essence revive the fully matured Contract for Deed under the Bankruptcy Code, pay the default under the plan, and return the Contract to Deed to it prebankruptcy condition wherein the entire accelerated balance of the Contract of Deed was owed. *In re Frazer*, 377 B.R. 621, 630 (9th Cir. BAP 2007).

The Court notes that McCue filed the notice of appeal and an expedited motion to stay all proceedings pending appeal on December 7, 2006. McCue also filed a motion for leave to appeal on December 16, 2006, and a motion to extend time to designate record and issues on appeal on December 18, 2006. Caughron then appeared on behalf of Debtors at a hearing held January 9, 2007, and appeared on behalf of these Debtors for all matters after January 9, 2007. Caughron filed a Notice of Substitution of Attorney on February 13, 2007.[2]

In December of 2007, Debtors filed an objection to Britton's proof of claim. A hearing on Debtors' Objection was held January 8, 2008, and following that hearing, the Court entered an Order on January 10, 2008, overruling Debtors' Objection in its entirety, reasoning:

> This Court disagrees with Debtors' position with respect to Britton's amended Proof of Claim. The parties do not dispute the facts as shown in Exhibit C. Exhibit C shows that as of June 21, 2006, Debtors owed Britton $14,147.84, which amount consisted of $13,781.91 in principal, $135.93 in interest, $110.00 in escrow fees, $20.00 in late fees and $100.00 in attorney fees. Debtors also do

---

[2] According to the Billing Statement attached to the instant Application, the notice of substitution of counsel was not drafted until January 11, 2007, and was not sent to the Debtors for signature until January 15, 2007.

not dispute that the per diem interest on the principal balance was $3.776.

According to this Court's calculation, 64 days elapsed between June 21, 2006, and August 25, 2006, the date Debtors filed their bankruptcy petition. Therefore, in this Court's calculation, Debtors owed $14,147.84 plus an additional $241.67 for interest to Debtors' petition date, for a total of $14,389.51 as of August 25, 2006. Such amount exceeds the amount of $14,257.35 set forth on Britton's amended Proof of Claim and, therefore, the Court finds Debtors' Objection without merit. The Court would also note that Britton was under no obligation to accept the funds of $830.00 ($300.00 made July 10, 2006, $230.00 made July 26, 2006, and $300.00 made August 11, 2006) held by the escrow company as such funds were clearly inadequate to pay the default amount of $14,147.84 owed on the Contract for Deed. As such, the Court will not toll the interest owed to Britton. The same holds true for the preconfirmation payments of $5,850.00 that Debtors have made to the Trustee. However, the Court will direct the escrow company to release the $830.00 to Britton immediately upon confirmation of Debtors' Chapter 13 Plan. Such funds shall be applied first to the $230.00 of pre-petition fees and costs, then to the pre-petition interest and lastly to the post-petition interest.

Caughron later filed an application on January 8, 2008, seeking an unspecified award of fees and costs against Britton on grounds that Debtors were successful with their appeal, and should thus be awarded the fees and costs that they "have accrued in defense of their rights in this case concerning the Contract."[3] In a Memorandum of Decision and Order entered March 27, 2008, this Court rejected Debtors' request for fees against Britton concluding that under Montana law, by breaching the Contract for Deed, Debtors forfeited their right to claim any damages. This Court also determined that the attorney fee provision of the Contract for Deed was not triggered because the thrust of Debtors' litigation concerning Britton's claim centered around the ability to cure the delinquent payments and defaulted balance owing under the Contract for Deed through provisions of the Bankruptcy Code, and as such, Debtors' request for fees and costs was not the

---

[3] Caughron filed an "Application for Professional Fees and Costs (In the Britton Matter)" on February 4, 2008, indicating that the fees and costs associated with litigating Britton's $14,257.35 claim were $18,445.02.

6

type of fees and costs contemplated by the Contract for Deed.

In addition to the above pleadings, Debtors filed several additional amended Chapter 13 plans, including a "Seventh Amended Chapter 13 Plan" that was filed April 23, 2008. Paragraph 2(a) of the Seventh Amended Plan provides that "[i]n advance of all other claims, except as provided below, the Trustee shall pay those claims, fees or charges specified in 11 U.S.C. § 507(a)(1), including the Debtors' attorney fees and costs, in such amounts as may be allowed by the Court, to Debt Relief Law, PLLC, 1130 Butte Avenue, Helena, MT 59601. Pursuant to 11 USC § 1322(a)(2), Debtors' counsel has agreed that to the extent that funding under this Plan is insufficient to fully pay all allowed fees and costs to Debt Relief Law, PLLC, after all other payments provided below, that any remaining allowed fees and costs will be paid by the Debtors to Debt Relief Law, PLLC following the completion of this Plan." Debtors' Seventh Amended Chapter 13 Plan was finally confirmed on June 27, 2008, after Debtors and Britton resolved by Stipulation Britton's remaining objection to confirmation. The Seventh Amended Plan was preceded by Caughron's Amended Disclosure of Compensation of Attorney for Debtor filed February 4, 2008, that states,

> [f]or legal services, I have agreed to accept payment of fees and costs to be paid as follows: Attorney fees @ $195.00 per hour, until May 1, 2007 and $225 per hour thereafter; Associate Attorney fees @ $150.00 per hour, and Paralegal fees @ $90.00 per hour. Costs may be billed as actual expenses for phone and postage. Mileage is billed at .485 cents per mile and copies are billed at .10 cents per copy. The Debtor has agreed to pay fees at the above rates. Debtors have agreed that I may file an additional Application for Compensation if hourly fees earned by me exceed the amount stated above.
>
> Debtor has paid a retainer of $825.00 for costs, from which the filing fee of $274.00 has been paid.

Caughron filed the pending Application on October 23, 2008, seeking an award of fees and costs

7

in the total amount of $28,093.93. Caughron withdrew as Debtors' counsel of record on December 16, 2008.

As previously mentioned, Caughron appeared at the hearing in support of the fee request. However, Caughron offered no testimony or evidence in support of his fee request, other than the statement that the stipulation between Caughron and the Debtors filed December 9, 2008, was essentially a withdrawal of Debtors' objection.

## APPLICABLE LAW

Neither the Chapter 13 Trustee nor the United States Trustee have filed a response to Caughron's pending Application, and given the Stipulation between Debtors and Caughron, no remaining objections exist to the Application. Despite the lack of any continuing objection to the aforementioned Application, this Court has an independent obligation to review all fee applications to evaluate the propriety of the compensation requested. *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994); *In re Wildman*, 72 B.R. 700, 701 (Bankr. N.D.Ill. 1987). In *Busy Beaver*, the court explained:

> [T]he integrity of the bankruptcy system ... is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications *sua sponte.* The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law.... Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

*Id.* (quoting *In re Evans*, 153 B.R. 960, 968 (Bankr. E.D.Pa 1993)).

Extensive case law has developed regarding the amount and type of information that applicants must include in their applications. The case of *In re WRB-West Associates*, 9 Mont.

8

B.R. 17, 18-20 (Bankr. D. Mont. 1990) summarizes thus:

> Pursuant to 11 U.S.C. §§ 327-330 and Bankruptcy Rules 2016 and 2017, this Court has an independent judicial responsibility to evaluate fees requested from the estate. *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 (Bankr. Vt. 1987); *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr. W.D. Okla. 1986); *In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr. Colo. 1987). The burden of proof to show entitlement to all fees requested from the estate is on the applicant. *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985). This burden is not to be taken lightly, especially given the fact that every dollar expended on fees results in a dollar less for distribution to creditors of the estate. *In re Yankton College*, 101 B.R. 151, 158 (Bankr. S.D. 1989); *In re Pettibone Corp.*, 74 B.R. 293, 305 (Bankr. N.D. Ill. 1987). All expenses and fees must be shown as both actual and necessary under § [330(a)(3)] of the Code. *S.T.N.*, 70 B.R. at 834; *Yankton College*, 101 B.R. at 158; *Seneca Oil*, 65 B.R. at 912. Moreover, *In re Convent Guardian Corp.*, 103 B.R. 937, 939-940 (Bankr. N.D. Ill. 1989) holds:
>
> > Bankruptcy Rule 2016 provides that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." (emphasis added) The Application should contain a detailed list of expenses including the date, the type and the amount. Expenses must be actual not estimates. *In re Wildman*, 72 B.R. 700-731 (Bankr. N.D. Ill. 1987); *In re Marsh*, 14 B.R. 615, 617 (Bankr. E.D. Va. 1981). An expense is necessary if it is incurred because it was reasonably needed to accomplish the proper representation of the client. *Wildman*, 72 B.R. at 731.

The above excerpt demonstrates that this Court is obligated to review each request for

fees and costs to insure that applicants provide:

1. a description of the services provided, setting forth, at a minimum, the parties involved and the nature and purpose of each task;
2. the date each service was provided;
3. the amount of time spent performing each task; and
4. the amount of fees requested for performing each task.

As explained by the Ninth Circuit Court of Appeals: "The detailed fee applications enable the

bankruptcy court to fulfill its obligation to examine carefully the requested compensation in order to ensure that the claimed expenses are justified." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir. 1985).

Attached to the instant Application is a billing statement which sets forth the services provided to Debtors, along with the dates the services were provided, the amount of time spent on the services and the fee requested for such services.  Upon review of the billing statement, the Court finds that Caughron has provided adequate detail to enable this Court to undertake its independent investigation.

DISCUSSION

After completing its independent investigation, the Court first finds that numerous entries involving McCue's fees are duplicative of Caughron's and paralegal Carolyn Hamilton's ("Hamilton") fees.  For instance, on September 12, 2006, Hamilton spent 1.46 hours "draft[ing] amended plan and disclosure statement" while McCue spent a portion of .54 hours ". . . prepar[ing] amended chapter 13 plan."  Caughron also spent 1.83 hours on September 11, 2006, "[e]dit[ing]Plan and related activities."  Given the extensive overlap of services performed by McCue, Hamilton and Caughron and given Debtors' objection to McCue's fees and the resulting Stipulation, the Court finds it appropriate and fair to completely disallow the fees charged by McCue.

As for the services performed by Hamilton, the Court finds that the only unreasonable fee for Hamilton's services is the fee of $39.18 charged on December 13, 2007, for "[d]raft[ing] objection to Cheryl Britton's amended proof of claim."  As reflected in this Memorandum of Decision and the Court's Order of January 8, 2008, Debtors had no basis for objecting to

10

Britton's proof of claim, and this Court will not allow any charge associated with such action. Thus, the fee of $39.18 is disallowed.  Thus, of the $1,844.77 of fees requested by Caughron for services performed by Hamilton, $1,805.59 are allowed.

The Court now turns to the services performed by Caughron.  First, fees of $4,099.61 for services performed between September 11, 2006, through December 28, 2006, are denied because during such period, McCue was acting as Debtors' attorney of record by filing all pleadings and appearing at all hearings.  In addition, it is clear from the record that the efforts by McCue and Caughron in drafting Debtors' original Chapter 13 plan filed September 11, 2006, amended Chapter 13 plan filed September 18, 2006, second amended Chapter 13 plan filed September 29, 2006, and third amended Chapter 13 plan filed November 3, 2006, were exercises in futility.  Moreover, Caughron requests fees of $672.64 for 3.45 hours of service performed on October 25, 2006, which entry contains, by Caughron's own description on the billing statement, "No description."  In other words, Caughron wholly failed to provide any detail regarding the services performed on that date.  Also, Caughron bills $585.00 on November 3, 2006, for "Preparation for hearing" and bills another $156.87 on December 28, 2006, for "Calls from and to client and trustee re hearing tomorrow, Preparations for hearing."  As the record clearly reflects, Caughron did not attend any hearings in this case until January 9, 2007, and this Court looks quite harshly on the fact that Caughron is attempting to bill for preparing for and attending hearings that he did not attend.  For the reasons discussed above, $4,099.61 of Caughron's fee request, for services performed between September 11, 2006, through December 28, 2006, are disallowed.

The Court also disallows fees of $149.50 on January 9, 2007, $130.63 on December 4,

11

2007, and $130.63 on January 8, 2008, or a total of $410.76, for travel time "to/from 341

Hearing.  Debtors' 341 meeting of creditors was held November 6, 2006, and while the entries

are presumably nothing more than sloppy record keeping by Caughron, it is not this Court's duty

to investigate further whether Caughron was attending a 341 meeting or a regularly scheduled

Court hearing.  Caughron's assertion that he was attending 341 meetings of creditors in this case,

when he clearly was not, simply compels this Court to deny any fees associated with such

erroneously detailed billing entries.

     Caughron also seeks to charge Debtors an hourly billing rate of $225.00 commencing

with an entry made on May 4, 2007, yet Caughron failed to apprise this Court until February 4,

2008, that the hourly billing rate in this case was anything other than $195.00 as originally

disclosed on September 18, 2006.  In another case involving Caughron, this Court wrote:

> Applicant filed a Third Amended Chapter 13 plan dated July 27, 1998, which
> contained the following provision:
>
> > In advance of all other claims, the Trustee shall pay those claims, fees, or
> > charges specified in 11 U.S.C. § 507(a)(1), including the Debtors' attorney
> > fees of $1,000.00 less $575.00 received from the Debtors prior to the
> > filing, plus costs and additional fees in such amount as may be allowed by
> > the Court... .
>
> That plan was confirmed by the Court on August 21, 1998.
>
> > The Court takes such a provision to mean that as of July 27, 1998,
> > Applicant had provided services to Debtors in the approximate sum of $1,000.00.
> > While Applicant did not sign the Third Amended Chapter 13 plan, he certainly
> > cannot deny that he prepared it or that he filed it with the Court.[4]  As Applicant is

---

[4]  Material misrepresentations with regard to any provision in a Chapter 13 plan could
subject either the attorney or the proponent of the plan to sanctions under Bankruptcy Rule 9011
which reads:

    By representing to the court (whether by signing, filing, submitting, or later

12

well aware, both the Court and the Trustee would assume that the fees incurred as of the date of the plan were in the neighborhood of $1,000.00 and would use such figure as a basis for calculating the feasibility of Debtors' plan.  Knowing the importance of this figure, Applicant nevertheless proceeded to mislead the Court and the Trustee by failing to include the actual fees incurred as of July 23, 1998, in the sum of $4,033.50.  Furthermore, as of the date of the Third Amended Chapter 13 plan, Applicant had incurred costs of $300.92.  In all, Caughron included less than a quarter of the total fees and costs that had been incurred at the time the Third Amended Chapter 13 plan was filed.

Such a gross understatement of fees can have a drastic impact on the confirmation of debtors' plans, and this Court will not tolerate this type of misrepresentation.

*In re Townsend*, 17 Mont. B.R. 141, 143-44 (Bankr. D. Mont. 1998).

While this case does not involve the type of misrepresentation discussed in *Townsend*, Caughron's failure to disclose – to this Court, the Chapter 13 trustee and other parties-in-interest – that his hourly billing rate had increased by $30.00 per hour nine months prior to his actual disclosure to the Court is a material failure to disclose information that could have impacted the feasibility of Debtors' numerous Chapter 13 Plans.[5]

Furthermore, 11 U.S.C. § 329 provides:

(a) Any attorney representing a debtor in a case under this title, or in connection

_____

advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

[5]  Caughron exercised no billing judgment or restraint.  These Debtors could not afford a monthly installment payment of $282.00 on their home prior to their bankruptcy.  But now Caughron has Debtors in a situation where they must make average monthly plan payments of $609.34 in order to save their home and compensate Caughron.

with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to –

(1) the estate, if the property transferred-

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

Section 329 is implemented by F.R.B.P. 2016.  Rule 2016(b) provides, in pertinent part, the following:

(b) *Disclosure of Compensation Paid or Promised to Attorney for Debtor.* Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity.... A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

Based upon the foregoing Code section and Rule, Caughron had a duty to disclose his

hourly rate as a supplement to McCue's original disclosure statement.  Caughron's decision to

wait nine months to make such disclosure does not comport with Rule 2016.  *See In re Lewis*,

113 F.3d 1040, 1044-45 (9th Cir. 1997).

The Ninth Circuit panel in *In re Park-Helena Corp.*, 63 F.3d 887, 880-81 (9th Cir. 1995),

14

concluded:

> To facilitate the court's policing responsibilities, the Bankruptcy Code and Federal Rules of Bankruptcy Procedure impose several disclosure requirements on attorneys who seek to represent a debtor and who seek to recover fees. *See* 11 U.S.C. § 329; Fed.R.Bankr.P. 2014 & 2016. The disclosure rules impose upon attorneys an independent responsibility. Thus, failure to comply with the disclosure rules is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule. *In re Film Ventures Int'l,* 75 B.R. at 252.

* * *

> A fee applicant must disclose "the precise nature of the fee arrangement," and not simply identify the ultimate owner of the funds. *See In re Glenn Elec. Sales Corp.,* 99 B.R. 596, 600 (D.N.J.1988); *see also In re Bob's Supermarket's, Inc.,* 146 B.R. 20, 25 (Bankr.D.Mont.1992) ( " '[D]ebtor's counsel [must] lay bare all its dealings ... regarding compensation.... Counsel's fee revelations must be direct and comprehensive. Coy, or incomplete disclosures ... are not sufficient.' ") (quoting *In re Saturley,* 131 B.R. 509, 516-17 (Bankr.D.Me.1991)), *aff'd in part and rev'd in part,* 165 B.R. 339 (9th Cir. BAP 1993); *In re Plaza Hotel Corp.,* 111 B.R. 882, 883 (Bankr.E.D.Cal.) ("the duty is one of complete disclosure of *all facts* ") (emphasis added), *aff'd,* 123 B.R. 466 (9th Cir. BAP 1990); *In re B.E.S. Concrete Prods., Inc.,* 93 B.R. 228, 237 (Bankr.E.D.Cal.1988) ("The burden is on the person to be employed to come forward and make *full, candid, and complete disclosure.*") (emphasis added).

> The disclosure rules are applied literally, even if the results are sometimes harsh. *See In re Plaza Hotel,* 111 B.R. at 883. Negligent or inadvertent omissions "do not vitiate the failure to disclose." *In re Maui 14K, Ltd.,* 133 B.R. 657, 660 (Bankr.D.Haw.1991); *In re Coastal Equities, Inc.,* 39 B.R. 304, 308 (Bankr.S.D.Cal.1984). Similarly, a disclosure violation may result in sanctions "regardless of actual harm to the estate." *In re Maui 14K,* 133 B.R. at 660.

The Court is given the inherent authority over Debtors' attorney's compensation to approve or deny fees and costs, in whole or in part, if a violation of disclosure occurs. *See In re Lewis*, 113 F.3d at 1045; and *In re Buckner* 350 B.R. 874, 878 (Bankr. D. Idaho 2005). The panel in *Lewis* stated:

> Although we did not explicitly so recognize in *In re Park-Helena,* the bankruptcy

15

court's authority to deny completely these attorney's fees was grounded in the inherent authority over the debtor's attorney's compensation. The Bankruptcy Code contains a number of provisions (e.g., §§ 327, 329, 330, 331) designed to protect the debtor from the debtor's attorney. *See, e.g., In re Walters,* 868 F.2d 665, 668 (4th Cir.1989) (noting that § 329 and Rule 2017 are designed to protect the creditors and the debtor against overreaching by attorney). As a result, several courts have recognized that the bankruptcy court has broad and inherent authority to deny any and all compensation when an attorney fails to meet the requirements of these provisions. *See, e.g., In re Downs,* 103 F.3d 472, 479 (6th Cir.1996) ("[T]he bankruptcy court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016. The authority to do so is inherent, and in the face of such infractions should be wielded forcefully."); *Matter of Prudhomme,* 43 F.3d 1000, 1003 (5th Cir.1995) ("Additionally, the court's broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order disgorgement as a sanction to debtors' counsel for nondisclosure."); *In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569, 575 (Bankr.N.D.Tex.1986) ("Indeed, a failure of counsel to obey the mandate of § 329 and Rule 2016 concerning disclosure, and by implication review by the Court, is a basis for entry of an order denying compensation and requiring the return of sums already paid.").

The Court concludes that Caughron violated the duty to disclose by failing to timely inform the Court of his fee increase, especially when he substituted as the attorney for Debtors and had during the pendency of the case purportedly done substantially all of the legal work. Even though the Court concludes, based upon Caughron's violation of disclosure, that it could disallow all fees in this case through its inherent authority, the Court exercises its discretion to limit Caughron's hourly billing rate to $195.00 for services performed up to February 4, 2008, the date Caughron amended his disclosure of compensation.  Disregarding the previously denied entries, Caughron asserts that he spent 22.88 on the services performed between May 4, 2007, and February 4, 2008 and based on an hourly rate of $195.00, Caughron's fees would be $4,461.60.  However, Caughron has billed $4,885.52 for the services performed on such dates. Accordingly, an additional $423.92 of Caughron's fee request is denied.

In total, the Court will allow Caughron's reasonable fees of $10,283.34.  The Court will also allow Hamilton's reasonable fees of $1,805.59 and will allow the costs of $1,117.15. Caughron asserts in the Application that he has already received fees and costs of $1,800.00 from Debtors.  Therefore, the Court will allow $11,406.08 of Caughron's fees and costs as an administrative expense of this bankruptcy estate.  In accordance with this Memorandum of Decision, the Court will enter a separate order as follows:

IT IS ORDERED that the Application for Professional Fees and Costs filed October 23, 2008, is approved in part and denied in part; and R. Clifton Caughron and Debt Relief Law, PLLC are awarded total fees of $11,088.93 ($12,088.93 less $1,000.00 paid by Debtors) and costs of $317.15 ($1,117.15 less $800.00 paid by Debtors), for a total award of $11,406.08, which amount shall be treated as an administrative expense of this Chapter 13 bankruptcy.  None of the denied fees will be owed by Debtors following completion of their Chapter 13 plan.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

17